**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                                             **CRIMINAL ACTION NO.: 3:16-CR-31**
                                                                            **(GROH)**

**BRENT JACKSON, STEVE CRITES,**
**JAMES MELVIN CRITES, BETTY**
**CRITES, KRISTY VANDUZER,**
**LARRY WEBSTER and JAMES R.**
**CRITES, a/k/a "JAY,"**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER**

    Now before the Court are the Defendants' Motion to Dismiss Counts 1-52 of the Indictment [ECF No. 83], Motion to Dismiss Count 53 of the Indictment [ECF No. 84] and Motion for Bill of Particulars [ECF No. 87], each having been filed on October 19, 2016, and joined in by all of the Defendants. This case stems from a fifty-three-count indictment in which the Defendants are alleged to have committed mail fraud, conspired to launder money, aided and abetted money laundering, aided and abetted unlawful monetary transactions and operated an illegal gambling business. For the reasons more fully stated herein, the Court denies the Defendants' motion to dismiss counts one through fifty-two, grants the motion to dismiss count fifty-three and grants in part the motion for bill of particulars.

## I. Motions to Dismiss

The Defendants move this Court to dismiss counts one through fifty-two of the indictment for various ostensible deficiencies, which they argue render the indictment fatally flawed.

The indictment in this case alleges that Kids Against Drugs of WV, Inc. ("Kids") was doing business as Big Bucks Bingo ("Bucks"), operating bingo and raffle games on behalf of FOP #83 and the Berkeley County Humane Society in Martinsburg, West Virginia. Paragraphs two through seven of the indictment cite various sections of the West Virginia code relating to requirements for the lawful operation of bingo and raffle games within the state. Paragraphs eight through fifteen allege that Bucks conducted charitable bingo and raffle games in the name of FOP #83 and the Berkeley County Humane Society from 2010 through 2014, upon application and approval from the state tax commissioner. Various tables provide the alleged distribution of proceeds from the games for the years 2010 through 2014, showing a significantly higher amount of money going to Kids. Next, the indictment alleges that Kids had its exempt status revoked, as indicated by letter mailed on April 2, 2015, with an effective date beginning in January 2011. The indictment also cites various sections of the West Virginia Code relating to requirements for holding bingo and raffle games within the state and names each of the seven Defendants along with a brief allegation of their involvement as it relates to the charged criminal conduct.

In the section of the indictment labeled scheme and artifice, the Government avers that Kids, doing business as Bucks, would unlawfully obtain an annual license from the West Virginia tax commissioner to fraudulently conduct bingo and raffle games

on behalf of the charitable organizations and retain more than 90% of the proceeds. The statutory language of 18 U.S.C. § 1341 is woven amongst the allegations in the indictment. For instance, on page eight, it states that the Defendants "willfully participated in and with knowledge of its fraudulent nature, the above described scheme and artifice to defraud and obtain money by materially false and fraudulent pretenses, representations and promises." The next paragraph states, the Defendants "aiding and abetting each other for the purpose of executing the above described scheme and artifice, knowingly caused to be delivered by mail according to the direction thereon each mailing constituting a separate count, the following matter[.]" Similarly, 18 U.S.C. § 1341 reads, "[w]hoever, having devised . . . any scheme or artifice to defraud, . . . for the purpose of executing such scheme or artifice . . . places in any post office . . . any matter or thing whatever to be sent or delivered . . . shall be fined under this title or imprisoned not more than 20 years, or both."

The indictment then utilizes a table to describe fifteen mailings, which constitute the alleged bases for counts one through fifteen. The indictment provides the date, sender, addressee, and contents of each mailing. As for their contents, each mailing was an application related to bingo or raffle games sent to the West Virginia state tax department.

Count sixteen, charging the Defendants with money laundering conspiracy, names all of the Defendants and uses the statutory language from 18 U.S.C. §§ 1956 and 1957 to describe the alleged conspiracy to conduct financial transactions involving proceeds derived from the mail fraud counts. The Government explains the alleged conduct in the "manner and means" paragraph, which describes a scheme of depositing

3

and transferring proceeds of the mail fraud counts into various bank accounts and entities. Counts seventeen through thirty-four allege the Defendants committed money laundering. In the indictment, the Government divides the money laundering counts into three separate groups based upon the transferor and transferee: counts seventeen through twenty-two involve proceeds transferred from Kids to S&B Berkeley, LLC ("S&B"); counts twenty-three through twenty-eight involve proceeds transferred from S&B to Berkeley Plaza, LLC and counts twenty-nine through thirty-four involve proceeds transferred from Berkeley Plaza, LLC to Frederick Business Properties. Each count provides a date the transfer took place and a dollar amount.[1]

Counts thirty-five through fifty-two allege that the Defendants, aiding and abetting each other, engaged in various monetary transactions by, through or to a financial institution, affecting interstate commerce, in criminally derived property valuing greater than $10,000.00. Specifically, the criminally derived property is described as the proceeds received from the mail fraud counts.

The Defendants contend that counts one through fifteen ("the mail fraud counts") are defective because they fail to provide sufficient information to permit a future plea of double jeopardy and they fail to state an offense. In support of their motion, the Defendants argue that the existence of victims must be alleged in some manner, but the indictment fails to identify "that there were any victims of the mail fraud, much less who or what those victims were." ECF No. 83 at 2. According to the Defendants, the indictment does not contain sufficient information to permit them to plead double jeopardy as a bar to a subsequent prosecution for the same offense. The Defendants also assert that the first fifteen counts are fatally flawed because they fail to state an

---

[1] Counts twenty-nine through thirty-four also include a check number.

offense. As to counts sixteen through thirty-four, the Defendants argue that the government will be unable to prove a design to conceal or disguise as alleged therein. The Defendants contend that counts thirty-five through fifty-two must be dismissed because they depend upon the fatally flawed mail fraud counts, which, upon being dismissed, would then render these counts fatally flawed as well.[2] Accordingly, the Defendants move this Court to dismiss counts one through fifty-two of the indictment.

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "One of the principal purposes of an indictment is to apprise the accused of the charge or charges leveled against him so he can prepare his defense." United States v. Fogel, 901 F.2d 23, 25 (4th Cir. 1990). The Fourth Circuit has upheld as sufficient indictments that did not allege specific acts in violation of cited statutes. See, e.g., United States v. Kelly, 462 F.2d 372, 374 (4th Cir. 1972) (finding that an "indictment, basically in the words of the statute, contained a sufficient statement of every essential element of the crime charged to enable defendants to present their defense").

To be found constitutional, "an indictment must (1) indicate the elements of the offense and fairly inform the defendant of the exact charges and (2) enable the defendant to plead double jeopardy in subsequent prosecutions for the same offense." United States v. Williams, 152 F.3d 294, 299 (4th Cir. 1998); see also Hamling v. United States, 418 U.S. 87, 117 (1974) (finding that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or

---

[2] The Defendants allege that counts sixteen through thirty-four are also flawed for this reason, but provide a second, unrelated reason that they should be dismissed.

5

conviction in bar of future prosecutions for the same offense" (internal citations omitted)). These criteria make certain that a defendant enjoys his or her constitutionally guaranteed rights "under the Fifth Amendment, which provides that a defendant cannot be prosecuted for a capital or infamous crime except on presentment or indictment of a grand jury, and under the Sixth Amendment, which provides 'that a defendant must be informed of the nature and cause of the accusation against him.'" United States v. Darby, 37 F.3d 1059, 1063 (4th Cir. 1994) (quoting United States v. Daniels, 973 F.2d 272 (4th Cir. 1992) (internal quotations omitted)). If an indictment is missing any essential element of the offense, it is invalid, and a bill of particulars cannot cure the defect. United States v. Loayza, 107 F.3d 257, 260 (4th Cir. 1997).

The Fourth Circuit has long recognized the essential elements of mail fraud as being "(1) the existence of a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme." United States v. Murr, 681 F.2d 246, 248 (4th Cir. 1982) (citing Pereira v. United States, 347 U.S. 1, 8 (1954)). Furthermore, in prosecutions for mail fraud, "indictments which do not identify specific mail fraud victims by name [are sufficient]." Loayza, 107 F.3d at 260 (quoting United States v. Mizyed, 927 F.2d 979, 981 (7th Cir. 1991), cert. denied, 500 U.S. 937 (1991)). As the Loayza court noted, "[t]he identity of the fraud victims is not an essential element of the crime." 107 F.3d at 261. The crux of the court's decision in Loayza is not whether an indictment specifies a victim, but that a defendant is adequately assured "that the indictment and prosecution [are] in fact for the same violations." Id. Although the indictment in Loayza lacked any of the victims' identities, it was found to be constitutionally adequate because it "informed the [defendant] of the charges and caused double jeopardy to

attach for the purposes of any future prosecution." Id. at 262 (finding the indictment "sufficiently specific" because it included "[t]he time period, the scheme, the purported investment companies, the 'cover-up' of the diversion of funds, and the use of the mail to carry out the scheme").

Similarly, to convict a defendant of money laundering under precedent in this circuit, the Government

> must prove: (1) the defendant conducted or attempted to conduct a financial transaction having at least a *de minimis* effect on interstate commerce[;] . . . (2) the property that was the subject of the transaction involved the proceeds of specified unlawful activity; (3) the defendant knew that the property involved represented the proceeds of some form of unlawful activity; and (4) the defendant knew that the transaction was designed in whole or part, to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the unlawful activity.

United States v. Wilkinson, 137 F.3d 214, 221 (4th Cir. 1998). Money laundering is commonly understood to occur when "money derived from criminal activity is placed into a legitimate business in an effort to cleanse the money of criminal taint." United States v. Bolden, 325 F.3d 471 (4th Cir. 2003) (noting, however, that "18 U.S.C. § 1956(a)(1) proscribes a much broader range of conduct"). Utilizing third parties, such as business entities or relatives "to purchase goods on one's behalf or from which one will benefit usually constitutes sufficient proof of a design to conceal[,]" and the creation or operation of sham businesses is highly relevant. Id. at 490 (quoting United States v. Willey, 57 F.3d 1374, 1385 (5th Cir. 1995)).

The Fourth Circuit has also expressly rejected the idea that funds derived from criminal activity cannot be laundered after they've been deposited into a legitimate bank account. See United States v. Blair, 661 F.3d 755 (4th Cir. 2011). Contending that

7

concealment only occurred when illegally obtained proceeds were first deposited into a bank account, the Defendant in Blair argued that "[w]hat was done with the money after it was deposited into the BB & T Bank account was simply spending money that had already been laundered." The Blair court disagreed, and it held that withdrawing "funds from an account qualifies as a 'transaction' for the purposes of the money laundering statute, which explicitly includes 'deposit[s]' and 'withdrawal[s]' within the definition of 'transaction.'" Id. at 765 (noting that a deposit of the tainted funds and the subsequent use of those funds constitute two separate transactions within the scope of the money laundering statute). The Fourth Circuit has also approved expert testimony explaining how the deposit of small bills in a bank account and withdrawal of larger bills, from the same bank account, "constituted concealment for the purposes of money laundering." United States v. Barber, 80 F.3d 964, 970-71 (4th Cir. 1996).

As explained more fully below, under this circuit's precedent, the relevant statutes and the Federal Rules of Criminal Procedure, the Defendants' arguments with regard to counts one through fifty-two of the indictment in this matter are without merit. Therefore, counts one through fifty-two shall not be dismissed.

The Defendants challenge the mail fraud counts with two distinct arguments, which, although nuanced, rely on the same premise—that the indictment lacks an enumerated victim or victims. First, the Defendants allege that the lack of a victim named in the indictment leaves them open to potential future prosecution for the same offense. The Court finds that the indictment is sufficiently specific to prevent future prosecution of the same crime. Each of the mail fraud counts provides a specific, correlated mailing, detailing the date sent, sender, addressee and contents. This

information is adequate to allow the Defendants to plead double jeopardy in a future prosecution for the same crime. See Loayza, 107 F.3d at 260.

Moreover, the Defendants' argument that the Government must explicitly name a victim in the indictment of a mail fraud case is without merit. The Court has detailed the precedent in this circuit regarding mail fraud prosecutions *supra*, and it is clear that the Government need not name or allege a victim in an indictment to properly charge or convict a defendant of mail fraud. Thus, the mail fraud counts of the indictment are sufficiently stated and shall not be dismissed.

The Defendants also aver that counts sixteen through thirty-four of the indictment should be dismissed because the Government will be unable to prove a design to conceal or disguise under the money laundering statute. In support of their contention, the Defendants argue that the indictment is void of any allegation that a design to conceal or disguise anything ever existed. The Defendants also note that two accounts were at the same bank and argue that money spending is not money laundering.

The Defendants' arguments are misplaced, as concealment, with regard to 18 U.S.C. § 1956(a)(1)(B)(i), does not quite literally mean hidden, but rather is construed broadly. The Fourth Circuit has acknowledged that depositing small bills and withdrawing large bills from the same bank account constitutes concealment as it is understood in the money laundering statute. See Barber, 80 F.3d at 970-71. Similarly, the court rejected a defendant's argument that his conviction for various counts of money laundering was improper because the laundering ceased once he deposited the tainted funds in a legitimate bank account. See Blair, 661 F.3d at 764-65. In rejecting his argument that the money laundering statute is not a money spending statute, the

court held that each deposit and withdrawal constituted what could be charged as separate transactions, and therefore separate counts in the indictment, under the statute. Id. Here, the alleged concealment, as contemplated by the money laundering statute, is found in each deposit and transfer of the alleged mail fraud proceeds. Therefore, counts sixteen through thirty-four of the indictment are not deficient for failing to allege a design to conceal or disguise.

The only argument the Defendants advance with regard to counts thirty-five through fifty-two is that they are rendered fatally defective because they allege transactions involving the proceeds of the mail fraud counts. Having already found the mail fraud counts to be without any fatal defects, the Court summarily concludes that the Defendants' argument that counts thirty-five through fifty-two should be dismissed is now moot.

Arguing that no reading of the indictment supports a violation of West Virginia law or 18 U.S.C. § 1955, the Defendants move this Court to dismiss count fifty-three.

Count fifty-three of the indictment alleges that all of the Defendants violated 18 U.S.C. §§ 1955 and 2 when they conducted, financed, managed, supervised, directed or owned all or part of an illegal gambling business, involving five or more people, by holding bingo and raffle games in violation of state law, and the gambling business remained in substantially continuous operation for more than thirty days with gross revenue of $2,000.00 in any single day. The indictment alleges that the Defendants violated W. Va. Code §§ 47-20-1, et. seq. and 47-21-1 et. seq. The choice of words used by the Government in the indictment closely mirrors the statutory language found in the United States Code sections cited above.

10

The Fourth Circuit has long held it "elementary that every ingredient of the crime must be charged in the bill, a general reference to the provisions of the statute being insufficient." Hale v. United States, 89 F.2d 578, 579 (4th Cir. 1937) (citations omitted). Having "repeatedly reaffirmed this rule in subsequent cases[,]" the Fourth Circuit has also noted that it is in accord with at least eight other circuits. United States v. Hooker, 841 F.2d 1225, 1228 (4th Cir. 1988) (citations omitted). When the definition of an offense includes plain terms, it is not sufficient that the indictment charge the offense in the same terms found in the definition, "it must descend to particulars." Russell v. United States, 369 U.S. 749, 765 (1962) (quoting United States v. Cruikshank, 92 U.S. 542, 558 (1875)). Even if an indictment follows the language of a statute, it is defective if it fails to "apprise the defendant with reasonable certainty of the nature of the accusation against him." Russell, 369 at 765 (internal quotation omitted). More specifically, the statutory language "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." Id. (quoting United States v. Hess, 124 U.S. 483, 487 (1888)).

Here, the only facts included in count fifty-three of the indictment are the Defendants' names and an allegation that the charged conduct took place continuously, from in or about September 2007 until June 16, 2014. Notably, count fifty-three does not incorporate by reference any preceding paragraphs, part or section of the indictment. However, at the outset of counts seventeen through thirty-four, the Government explicitly states that paragraphs one through twenty-four are incorporated by reference. In Hooker the court, sitting *en banc*, reversed the defendant's conviction

as to one of the counts because that count of the indictment was void of any facts to support an essential element of the statute. See 841 F.2d at 1227-28 (finding unpersuasive the Government's argument that such an omission was nevertheless cured by citation of the statute, which included the missing essential element, under which the defendant was charged). The Government argued that the indictment should be read as a whole, as other counts in the indictment contained supporting facts that would have established the missing element of the challenged count.[3] Accordingly, the Hooker court held that a missing element cannot "be read into an indictment from another count—at least not when the challenged count fails to incorporate by reference." 841 F.2d at 1231.

Without more than an approximately seven-year time frame and the names of the Defendants, the Court finds that count fifty-three of the indictment in this matter lacks specificity that citation of the statutory language cannot cure, and therefore, count fifty-three shall be dismissed.

## II. Motion for Bill of Particulars

The Defendants move this Court to order the Government to file a bill of particulars identifying the actual or intended victims of the alleged scheme and artifice to defraud; the provisions of West Virginia law regarding bingo games and raffles that the Defendants allegedly violated; the false material statements or assertions allegedly made by the Defendants with the intent to defraud and any documents related thereto.

Furthermore, the Defendants contend that, although the indictment sets forth many provisions of West Virginia law regarding bingo games and raffles, "there is no

---

[3] The court noted that failing to include an incorporation by reference in the challenged count was a "particularly striking omission because [another count did] incorporate by reference . . . showing that the grand jury knew how to incorporate by reference if it so chose."

12

allegation of any violation of most of them." Id. at 3. The Defendants also argue that the indictment fails to specify what false material statements or assertions the Defendants allegedly made with the intent to defraud. Finally, the Defendants point to the "enormous volume of discovery" coupled with the "lack of specificity in the indictment" in support of their argument that they lack proper notice of the charges against they face and are not able to adequately prepare their defenses and avoid surprise at trial.

Pursuant to the Federal Rules of Criminal Procedure, this court may direct the Government to file a bill of particulars. Fed. R. Crim. P. 7(f). Whether a motion for bill of particulars should be granted or denied is a matter within the sound discretion of the trial court. United States v. Schembari, 484 F.2d 931, 934 (4th Cir. 1973). "A bill of particulars identifies for the defendant the area within which the government's chief evidence will fall[, and] . . . its purpose 'is to fairly apprise the defendant of the charges against him so that he may adequately prepare a defense and avoid surprise at trial . . . not . . . to provide detailed disclosure of the government's evidence in advance of trial.'" United States v. Fletcher, 74 F.3d 49, 53 (4th Cir. 1996) (quoting United States v. Automated Medical Labs., Inc., 770 F.2d 399, 405 (4th Cir. 1985) (citation omitted)); see also Schembari, 484 F.2d at 934-35.

When a court orders the Government to submit a bill of particulars, it does not become part of the indictment, "nor does it constitute a change or an amendment of the charges as set forth in the indictment." Fletcher, 74 F.3d at 53 (citations omitted). Instead, a bill of particulars simply "amplifies the indictment by providing missing or additional information so that the defendant can effectively prepare for trial." Id. (citing

United States v. Howard, 590 F.2d 564, 567 (4th Cir.), cert. denied, 440 U.S. 976 (1979)). A bill of particulars also enables a defendant "to plead his acquittal or conviction in bar of another prosecution for the same offense." Schembari, 484 F.2d at 935. In the case of a defendant who is charged with fraud, "it is critical that the government identify in the indictment the dates of the fraudulent conduct, the specific fraudulent documents, and the fraudulent statements within the documents." United States v. Sampson, 448 F. Supp. 2d 692, 696 (E.D. Va. 2006) (citing United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987)).

Here, the Court takes into consideration that, although counts one through fifty-two are legally sufficient to withstand a motion to dismiss, the indictment is not overly detailed or fact-ridden. Furthermore, both parties have averred that the discovery in this case is quite voluminous, exceeding some 60,000 pages of documents. Accordingly, the Court finds that, to avoid any unfair surprise to the Defendants, the motion for bill of particulars shall be granted in part. Specifically, the Court **ORDERS** the Government to submit a bill of particulars in response to the requests found in paragraph 13, subparts (a), (b), (e) and (f) of the Defendants' motion on or before November 9, 2016.

As to subparts (c) and (d), the Court finds that the indictment provides sufficient information to apprise the Defendants of the charges that they face and in a manner that allows the Defendants to adequately prepare a defense and avoid surprise at trial.

### III. Conclusion

Therefore, upon review and consideration of the parties' submissions and the law, the Court hereby **DENIES** the Defendants' Motion to Dismiss Counts One through Fifty-Two of the Indictment [ECF No. 83]; **GRANTS** the Defendants' Motion to Dismiss

Count Fifty-Three of the Indictment [ECF No. 84] and **GRANTS IN PART** the Defendants' Motion for Bill of Particulars [ECF No. 87].

The Clerk is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED:** November 02, 2016

/s/ Gina M. Groh
GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE